IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FEIZ ALI RAMANDI MOHAMMAD,

       Petitioner,

v.

                                                   Case No. 2:26-cv-00305-SMD-KRS

KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; PAMELA BONDI,
U.S. Attorney General; MARY DE ANDA-YBARRA,
Field Officer Director of Enforcement and Removal
Operations, El Paso Field Office, Immigration and
Customs Enforcement; and DORA CASTRO, WARDEN,
Otero County Processing Center,

       Respondents.[1]


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on *pro se* Petitioner Feiz Ali Ramandi Mohammad's

("Petitioner") Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), (Doc. 1),

filed February 6, 2026. On February 23, 2026, the Federal Respondents filed a response. (Doc. 7).

Respondent Dora Castro ("Respondent Castro") did not join in their response nor did Respondent

Castro file a response.[2] From March 24, 2026, to May 8, 2026, Petitioner filed multiple letters in

the instant case that the undersigned recommends be construed as a reply. *See* (Docs. 9-11, 13-

---

[1] The opening pleading lists Kristi Noem and Pamela Bondi as Respondents. The Court directs the Clerk to replace Respondent Kristi Noem with Markwayne Mullin, the current Secretary, U.S. Department of Homeland Security, and Respondent Pamel Bondi with Todd Blanche, the current Attorney General of the United States. *See Lowmaster v. Dir., Bureau of Prisons*, 2024 WL 5135970, at *1 (D. Kan. Dec. 17, 2024) ("the Court notes that it routinely substitutes the" proper parties as "respondent in habeas cases"); *Danderson v. Page*, 2024 WL 3913051, at *2 (E.D. Okla. Aug. 20, 2024) (substituting the proper party respondent in a habeas case).

[2] Respondents' deadline to answer Petitioner's motion was February 24, 2026. (Doc. 4 at 3).

14).[3] In his Petition and reply, Petitioner asserts there is not a significant likelihood of his removal in the reasonably foreseeable future, and he should be released under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). *See* (Docs. 1, 9, 10, 11, 13, and 14). Petitioner also articulates three additional grounds for the Petition without citing legal or factual support. (Doc. 1). On May 20, 2026, the Court directed Federal Respondents to provide an update as to the status of Petitioner's removal since the record is void of any evidence demonstrating Petitioner's removal is reasonably foreseeable. (Doc. 15). Federal Respondents timely provided a status update on May 27, 2026. (Doc. 16). United States District Judge Sarah M. Davenport referred this case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 5). Having considered the parties' submissions and the relevant law, I recommend the Court **DENY** the Petition and the case be **DISMISSED without prejudice** because Petitioner is being detained with a significant likelihood of removal in the reasonably foreseeable future and the Court lacks jurisdiction.

## I.    BACKGROUND

Petitioner, a native citizen of Iran, entered the United States without inspection, admission, or parole on or about April 28, 2024, at or near San Ysidro, California. (Doc. 7 at 1); (Doc. 7-1 at 1). On April 28, 2024, United States Border Patrol ("USBP") agents arrested Petitioner. (Doc. 7-1 at 1); (Doc. 16-1 at 1, ¶ 5). Petitioner was charged with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) and was subsequently released on an Order of

---

[3] In the March 24, 2026, letter, Petitioner seeks guidance from this Court on how to proceed with his appeal in the immigration court. (Doc. 9). In the April 3, 2026, letter, Petitioner claims "ICE officers of the Otero County Processing Center forcing [him] to sign deportation papers." (Doc. 10 at 1). On April 13, 2026, Petitioner notified this Court that he appealed to the Board of Immigration Appeals. *See* (Doc. 11). In the April 20, 2026, letter, Petitioner states that the Board of Immigration Appeals dismissed his appeal on April 10, 2026, because his appeal was deemed untimely. He further states that the sixth month period for the final removal period expired on April 2, 2026. (Doc. 13 at 1). Accordingly, Petitioner argues that his removal is not reasonably foreseeable. (*Id.*) Petitioner's May 8, 2026, letter contends his removal is not reasonably foreseeable and seeks political and religious asylum. *See* (Doc. 14 at 1-2).

Recognizance pending immigration proceedings on April 30, 2024. (Doc. 7-1 at 1). Petitioner was notified to appear before an Immigration Judge ("IJ") on August 24, 2024. (*Id.*) On January 13, 2025, Petitioner filed an I-589 asylum application. (Doc. 7-4 at 1).

On June 24, 2025, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") in Los Angeles, California, pursuant to an arrest warrant. (Doc. 1 at 1); (Doc. 7 at 2); (Doc. 7-2 at 1-2); (Doc. 7-3). Petitioner was again charged for being present in the United Statues without being admitted or paroled pursuant to Section 212(a)(6)(A)(i) of the INA. (Doc. 1 at 1); (Doc. 7 at 2); (Doc. 7-2 at 1-2).

On July 13, 2025, Petitioner was transferred to the Otero County Processing Center in Chaparral, New Mexico, where Petitioner is currently incarcerated. (Doc. 1 at 1). Petitioner's hearing before an IJ was originally set for August 29, 2025, but was continued to October 6, 2025, based on Petitioner's motion to continue. (Doc. 7-4 at 1).

On October 2, 2025, an IJ found Petitioner's asylum application was incomplete after Petitioner was granted an opportunity to cure. (*Id.*) The IJ specifically noted that Petitioner's attorney had nearly eight (8) months to cure the asylum application and failed to do so. (*Id.*) The IJ concluded Petitioner's incomplete asylum application was deemed abandoned and, thus, ordered Petitioner's removal to Iran. (*Id.*) Petitioner's appeal was due November 3, 2025. (*Id.* at 2). Petitioner's counsel was electronically notified of the October 2, 2025, IJ's Order, but did not file an appeal. (Doc. 7-4 at 2); (Doc. 7-5 at 2-3, ¶ 9). The removal order thus became final on November 3, 2025.

On November 5, 2025, Enforcement and Removal Operations ("ERO") Office in Chaparral, New Mexico, served Petitioner with removal documents. (Doc. 7-5 at 3, ¶ 10). On December 8, 2025, ERO contacted the Iranian consulate to initiate a travel document request. (Doc.

3

16-1 at 2, ¶ 12). The ERO also prepared a money order request for the issuance of Petitioner's travel document. (*Id.* at ¶ 13). The ERO, as of May 24, 2026, is still awaiting the issuance of the travel documents. (*Id.*)

On February 28, 2026, ERO requested an intel check on Petitioner with the Joint Terrorist Task Forces ("JTTF"). (*Id.* at ¶ 14). The JTTF informed ERO that "derogatory information was found on [Petitioner]." (*Id.* at ¶ 15). As a result, Petitioner's case was elevated for further vetting. (*Id.*) On March 5, 2026, JTTF interviewed Petitioner. (*Id.* at ¶ 16). The JTTF concluded Petitioner "had positive results" and informed ERO "to not [conduct] removal without coordination with JTTF." (*Id.* at ¶ 17).

On April 6, 2026, ERO requested Petitioner's travel document packet from the Iranian embassy. (*Id.* at ¶ ¶ 18-19). On April 16, 2026, the Iranian embassy requested an interview with Petitioner, which was held on April 24, 2026. (*Id.* at ¶¶ 20, 21). On April 28, 2026, Iranian embassy updated ERO that it submitted an inquiry about Petitioner. (*Id.* at ¶ 17). ERO contacted the Iran embassy on May 5, 2026, and May 19, 2026, requesting an update on the issuance of Petitioner's travel documents. (*Id.* at ¶¶ 23, 24). ERO intends to facilitate Petitioner's removal upon receipt of his travel documents. (*Id.* at ¶ 25).

## II.    LEGAL STANDARD

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A habeas petition under 28 U.S.C. § 2241 "challenges 'the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement.'"

*Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that [she] is entitled to relief." *Sa'Ra v. Raemisch*, 536 F. App'x 783, 788 (10th Cir. 2013) (quoting *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964)). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## III.    DISCUSSION

Petitioner asserts that his removal from the United States is not significantly likely in the reasonably foreseeable future in violation of *Zadvydas*. (Doc. 1 at 6 (Count II)). Construing the *pro se* Petition liberally, Petitioner further argues that his continued detention is unconstitutional because he was deprived notice and due process. (Doc. 1 at 6 (Counts I, III), 7 (Count IV). As explained below, Petitioner did not make an initial showing that his removal was not significantly likely in the reasonably foreseeable future. Assuming, *arguendo*, the burden shifted to Federal Respondents, Federal Respondents made such a showing in the Status Report filed May 26, 2026, (Doc. 16), and thus, Petitioner is not entitled to release under *Zadvydas*. Moreover, Petitioner failed to appeal the removal order to the Board of Immigration Appeals ("BIA"). Hence, the Court does not have subject matter jurisdiction over his constitutional claims.

### A.    Petitioner's Removal is Reasonably Foreseeable

An immigration detainee "in custody in violation of the Constitution or laws or treaties of the United States" may seek habeas relief. 28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S.

5

678. Pursuant to the INA, Respondents must remove a noncitizen within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i).

Upon expiration of the initial removal period, the Government may continue to detain the noncitizen, but not indefinitely. *Id.* § 1231(a)(6); *Zadvydas*, 533 U.S. at 699. Continued detention for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. After six months, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must then rebut the noncitizen's showing with evidence. *Id.* The Attorney General "may release the alien" on bond or conditional parole, unless the alien has committed certain criminal offenses or terrorist activities listed in § 1226(c), in which case detention is mandatory. *See* 8 U.S.C. § 1226(a)(2)(A)–(B), (c); *Jennings v. Rodriguez*, 583 U.S. 281, 288-89, 303 (2018).

Here, Petitioner's removal order became final on November 3, 2025, when he failed to appeal the IJ's removal order. More than six months have passed since the removal order became final on November 3, 2025.[4] Petitioner, however, does not cite in his Petition any other facts establishing a good reason to believe that there is not a significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner has not shown good reason to believe there is not a significant likelihood of removal in the reasonably foreseeable future.

On the other hand, assuming Petitioner carried his initial burden, Federal Respondents have

---

[4] The *Zadvydas* presumptively reasonable period does not begin until a removal order becomes administratively final. In this case, the IJ's removal order did not become administratively final until the expiration of the appeal period on November 3, 2025. Six months (or 180 days) from November 3, 2025, is May 2, 2026. Petitioner's claim of prolonged detention under *Zadvydas* was not ripe for this Court's review until May 2, 2026.

shown that his removal is significantly likely in the reasonably foreseeable future. After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the respondents to rebut the showing. *Zadvydas*, 533 U.S. at 701. Federal Respondents must provide "evidence" in rebuttal. *See id.* Federal Respondents attest that they requested travel from documents from the Iranian embassy to effect removal. (Doc. 16-1 at 2, ¶¶ 19-20, 23-24)  On April 24, 2026, Petitioner had an interview with the Iranian embassy. (*Id.* at ¶ 21). The Iranian embassy subsequently notified ERO that it inquired about Petitioner. (*Id.* at ¶ 22). Since May 5, 2026, ERO has followed up with the Iran embassy to determine the status of Petitioner's travel documents to facilitate his removal. (*Id.* at ¶¶ 23-25). The Court thus finds that Federal Respondents have shown Petitioner's removal is significantly likely in the reasonably foreseeable future. The Court therefore recommends the Petition be denied as to Count II.

**B.    The Court Lacks Jurisdiction over Counts I, III, and IV**

Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251-52 (D.N.M. Oct. 15, 2025) (citing *KY. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Though the Government, "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," that "limited

period" cannot be indefinite. *Demore v. Kim*, 538 U.S. 510, 527 (2003). As the length of detention stretches on, an individual's due process interests escalate and the government's burden to justify continued detention mounts. *Id.* at 529; *Jennings*, 583 U.S. at 310-11; *Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 957 (D. Minn. 2018).

Petitioner summarily argues that the IJ denied his "all reliefs . . . without a court hearing and a chance to appeal." (Doc. 1 at 6). He further claims that he has political and religious differences with the Iran government and "proper evidence" to support his claims. (*Id.*) The Petition is void of any evidence supporting his contentions. Further, the record clearly demonstrates that Petitioner was represented by counsel throughout his removal proceedings. His counsel, however, did not complete the asylum application after the IJ granted him eight (8) months to cure the deficiencies. Petitioner's legal counsel also failed to appeal the removal order.

To begin, to the extent Respondents argue that a detainee is required to exhaust his administrative remedies before a court can order habeas relief, this Court is not persuaded. Petitioners are ordinarily required to exhaust their administrative remedies prior to seeking a writ under 28 U.S.C. § 2241, but exhaustion is not a statutory requirement. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *see also Soberanes*, 388 F.3d at 1310–11 (Although appealing to the BIA normally is required to obtain subsequent judicial review, exhaustion deficiencies do not affect habeas jurisdiction over challenges to immigration detention.). As another court within the Tenth Circuit recently explained in the context of an immigration habeas matter, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is." *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. OK. June 12, 2025) (citation modified) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–17 (2023)). Further, the Tenth Circuit has not addressed whether the exhaustion requirement

8

applies in the immigration context, and the INA only explicitly requires exhaustion of administrative remedies when challenging a final removal order. *See* 8 U.S.C. § 1252(d)1); *see also Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (explaining that administrative exhaustion applies to challenges of final orders of removal but not to challenges to preliminary custody or bond determinations). "[W]here Congress [has] not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (requiring courts to weigh the institutional interests in exhaustion against the individual interests in prompt judicial review). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203.

Conversely, the Court agrees that Petitioner was required to exhaust his administrative remedies once the removal order became final on November 3, 2025. *See* 8 U.S.C. § 1252(d)1); *see also Gonzales*, 355 F.3d at 1016. It is undisputed that Petitioner, and his legal counsel, did not appeal the final removal order to the BIA. The failure to comply with the INA's exhaustion prerequisite to filing a habeas petition may only be waived if Petitioner can demonstrate that an appeal would have been futile. Petitioner has not met that burden. The Petition, and the record, are void of any arguments or facts supporting futility. Because Petitioner filed his pleadings *pro se*, the Court construed each of his arguments liberally. But even so, the Court may not assume the role of his advocate and advance futility arguments. *United States v. Hernandez*, 627 F.3d 1331, 1335 (10th Cir. 2010). Petitioner's administrative remedies, therefore, have not been exhausted, and the Court is without jurisdiction to grant relief. *See Soberanes*, 388 F.3d at 1309 (without exhaustion, the court lacked jurisdiction to review IJ's order); *see also McCarthy*, 503 U.S. at 144 (exhaustion of administrative remedies is generally required before judicial relief may be obtained for allegedly unlawful custody, even when no statute mandates exhaustion). Accordingly, this

Court recommends denying the Petition as to Counts I, III, and IV for lack of jurisdiction.

## IV.    RECOMMENDATION

For the reasons stated above, the Court respectfully recommends as follows:

1.    Petitioner Feiz Ali Ramandi Mohammad's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Doc. 1), should be **DENIED** and **DISMISSED without prejudice**;

2.    Respondents shall provide a status report of Petitioner's removal proceedings four (4) weeks from entry of the Court's Judgment;

3.    Petitioner may file a Motion for Reconsideration of Judgment 120 days after the Court enters Judgment if Petitioner is still detained; and

4.    The Court should retain jurisdiction over this matter to decide any future motion for an award of reasonable attorney's fees and costs under the EAJA.

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE